1  KENDALL BRILL & KLIEGER LLP
   Richard B. Kendall (90072)
2   rkendall@kbkfirm.com
   Philip M. Kelly (212714)
3   pkelly@kbkfirm.com
   Ashlee R. Lynn (261002)
4   alynn@kbkfirm.com
   10100 Santa Monica Blvd., Suite 1725
5  Los Angeles, California 90067
   Telephone: 310.556.2700
6  Facsimile: 310.556.2705

7  Attorneys for Plaintiff-in-Interpleader
   HACHETTE BOOK GROUP, INC.
8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  HACHETTE BOOK GROUP, INC., a    Case No. CV10-03534
    Delaware Corporation,
13                                   COMPLAINT-IN-INTERPLEADER
              Plaintiff-in-Interpleader,
14
         v.
15
    WINDBLOWN MEDIA, INC., a
16  California Corporation; WAYNE
    JACOBSEN; BRAD CUMMINGS;
17  WILLIAM PAUL YOUNG,

18            Defendants-in-
              Interpleader.
19

20
         Plaintiff-in-Interpleader, Hachette Book Group, Inc. ("Hachette"), alleges as
21
    follows:
22
                **SUMMARY OF COMPLAINT-IN-INTERPLEADER**
23
         1.   Hachette is the distributor of a literary work entitled *The Shack*
24
    (hereinafter the "Book"). The publisher of the Book is Defendant-in-Interpleader
25
    Windblown Media, Inc. ("Windblown"), which was formed by Defendants-in-
26
    Interpleader Wayne Jacobsen ("Jacobsen") and Brad Cummings ("Cummings").
27
    The listed author of the Book is Defendant-in-Interpleader William Paul Young
28

51142.1
                       COMPLAINT-IN-INTERPLEADER

1  ("Young"). As described more fully below, Hachette is holding certain funds from
2  sales of the Book in the first quarter of 2010 that are to be distributed to Windblown,
3  Jacobsen, Cummings, and Young. As a result of disputes that have arisen
4  concerning the allocation of royalties and certain other proceeds from the sales of
5  the Book, Hachette requires the guidance of this Court to determine how much of
6  these funds should be paid to Windblown and how much should be paid to
7  Jacobsen, Cummings, and Young.

8      2.     The disputes between Windblown, Jacobsen, Cummings, and Young
9  first arose several years after Young developed a manuscript for a Christian-based
10  novel. Windblown alleges that Young sent Jacobsen a copy of the manuscript in
11  December 2005 and solicited Jacobsen's and Cummings's help in rewriting the
12  manuscript. Windblown alleges that Young, Jacobsen, and Cummings collaborated
13  to transform Young's manuscript into the Book. Unsatisfied with the credit
14  received for their efforts, Cummings and Jacobsen filed an action against Young in
15  the United States District Court for the Central District of California, Case No.
16  CV10-3246-JFW (JCX) (hereinafter, the "Federal Court Action"), which seeks,
17  among other things, a determination that Jacobsen and Cummings are co-authors of,
18  and therefore have various economic rights in, the Book.

19      3.     Jacobsen, Cummings, and Young also dispute in the Federal Court
20  Action (as well as in a state court action, as discussed below) the interpretation of
21  certain oral and written agreements among them and Windblown that bear on the
22  allocation of proceeds from Hachette's sales of the Book. Jacobsen and Cummings
23  allege that they formed Windblown in 2007 to publish the Book, as well as works by
24  Jacobsen and other authors, pursuant to an oral agreement with Young for
25  Windblown to publish the Book. They allege that after demand for the Book took
26  off, Windblown and Young jointly decided to pursue an arrangement with a well-
27  known publishing house to provide large-scale distribution of the Book in order to
28  significantly increase sales. Prior to entering into such an agreement, Windblown

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

2

COMPLAINT-IN-INTERPLEADER

1. and Young agreed to commit their oral agreement to writing. Windblown and Young therefore entered into a written agreement on May 10, 2008 (the "Windblown-Young Agreement"). Numerous disputes have arisen among Young, Jacobsen, Cummings, and Windblown concerning the parties' financial rights and obligations arising from the Windblown-Young Agreement.

4. In furtherance of the objective of securing the services of a major publishing house to provide large-scale distribution of the Book and after negotiations with several publishers, Windblown subsequently entered into a written agreement on May 13, 2008 with Hachette, pursuant to which Hachette agreed to manufacture, distribute, market, and provide other related services for the Book (the "Hachette-Windblown Agreement."). The Book has become hugely successful, selling over eight million copies.

5. Under the Hachette-Windblown Agreement, Hachette is obligated to send certain "author royalty" payments to Young, Jacobsen, and Cummings in accordance with the information provided by Windblown. Hachette is also obligated to send payments to Windblown of certain "Defined Proceeds" based on revenues generated by Hachette from the Book, net of the author royalty payments and certain deductible expenses incurred by Hachette. Hachette is currently in possession of $1,005,496.00, which constitutes Defined Proceeds for the quarter ending March 31, 2010 (hereinafter, the "Funds"). Windblown, Jacobsen, Cummings, and Young all have asserted competing claims to the Funds, as more fully described below.

6. Young alleges that he is entitled to a significantly larger portion of Defined Proceeds and author royalties from Windblown than he has been paid to date. Although Young has not yet responded to the Complaint in the Federal Action, Young has filed an action in Ventura County Superior Court, Case No. 56-2009-00362329-CU-BC-VTA (hereinafter, the "State Court Action"), against both Windblown and Hachette alleging, among other things, that he has not been paid a

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

3

COMPLAINT-IN-INTERPLEADER

proper share of the Defined Proceeds and author royalties received by Windblown in prior time periods. Young has asserted that he has the right to demand that Hachette pay him the larger portion of Defined Proceeds and author royalties to which he claims he is entitled. Windblown disagrees with Young and asserts that Young's claims are overstated and contrary to the Windblown-Young Agreement. Hachette disagrees with Young as to certain of his claims, but takes no position as to at least one of Young's other claims.

7. In light of the adverse claims to the Defined Proceeds, Hachette has a reasonable fear that distributing the Defined Proceeds would expose Hachette to multiple claims and liabilities from Windblown, Jacobsen, Cummings, and Young. As a result, Hachette has brought this interpleader action so that the Court can determine the proper allocation of the Funds as between Windblown, Jacobsen, Cummings, and Young, and determine Hachette's responsibilities with respect to such allocation and other allocations of Defined Proceeds and author royalty payments that are or may become the subject of disputes among the parties.

## THE PARTIES

8. Plaintiff-in-Interpleader Hachette is a Delaware corporation with its principal place of business in New York City, New York.

9. Defendant-in-Interpleader Windblown is a corporation incorporated under the laws of the state of California, with its principal place of business located in Newbury Park, Ventura County, California.

10. Defendant-in-Interpleader Jacobsen is an individual residing in Newbury Park, Ventura County, California.

11. Defendant-in-Interpleader Cummings is an individual residing in Newbury Park, Ventura Country, California.

12. Defendant-in-Interpleader Young is an individual residing in Oregon City, Oregon.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

4

COMPLAINT-IN-INTERPLEADER

## JURISDICTION AND VENUE

13. The Court has original subject matter jurisdiction over this Complaint-in-Interpleader pursuant to 28 U.S.C. § 1335 in that diversity of citizenship exists between two adverse claimants, as set forth above, and the amount in controversy exceeds $500, exclusive of interest.

14. In addition to the foregoing, this interpleader action is appropriate under Rule 22 of the Federal Rules of Civil Procedure. To the extent this Complaint-in- Interpleader is brought pursuant to Rule 22, subject matter jurisdiction exists pursuant under 28 U.S.C. § 1332 (Diversity Jurisdiction) in that the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and is between citizens of different states.

15. Venue is proper pursuant to 28 U.S.C. §§ 1391(a) and 1397 in that the action is being brought in a judicial district in which one or more of the Defendants-in-Interpleader resides and the Defendants-in-Interpleader are subject to personal jurisdiction in this judicial district.

## GENERAL ALLEGATIONS

16. Windblown alleges that after the Book was completed and Young, Jacobsen, and Cummings were unable to find a publisher, Windblown and Young entered into an oral publishing agreement in or around 2007 by which they agreed that Windblown would publish the Book. Under the terms of this oral agreement, Windblown alleges that Young would receive a $.50 per paperback/$1.00 per hardback royalty for each copy of the Book sold. Windblown would set aside fifty percent of the revenue received in connection with the Book for profits to be shared equally among the Book's co-authors, with Young, Jacobsen, and Cummings each receiving one-third of those profits. The remaining fifty percent of the revenue received from the exploitation of the Book was set aside for Windblown's operating capital.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

5

COMPLAINT-IN-INTERPLEADER

17. Windblown alleges that as Windblown's sales of the Book approached one million copies, Young, Jacobsen, and Cummings agreed that Windblown should seek a larger publishing house with the ability to provide fulfillment and related services to meet the overwhelming demand for the Book. It was as a result of this decision that Windblown came into contact with Hachette, one of the nation's top book publishers and distributors. Windblown alleges that Young was actively involved in and approved Windblown's decision to enter into a contract with Hachette to provide fulfillment services for the Book, realizing that they would all be surrendering up to one-half of the profits from the book to Hachette as the publisher. Windblown alleges that Cummings and Young discussed at length the fact that if Windblown were to contract with Hachette, Young, Jacobsen and Cummings would each receive one-sixth rather than one-third of the profits from the Book, with the upside being that there would be a higher volume of sales and the Book would reach a much larger audience.

18. Young, Jacobsen, and Cummings agreed that before entering into an agreement with a third party fulfillment service provider, Windblown and Young would enter into a written publishing agreement.

19. Windblown alleges that Young, on the one hand, and Jacobsen on behalf of Windblown, on the other hand, negotiated and jointly drafted the Windblown-Young Agreement dated May 10, 2008. The Windblown-Young Agreement provides that Young would receive an author royalty of $.50 per paperback/$1.00 per hardback for each copy of the Book sold in the United States, along with one-third of the net profits received by Windblown from Hachette's sales of the Book. For foreign sales of the Book and certain other products, the author royalty rate is divided such that Young would receive 60%, Jacobsen would receive 20%, and Cummings would receive 20%. For copies sold at a discount of 55% or greater off the retail price, premiums (defined as promotional items not for individual resale), and copies sold as a result of Windblown's direct marketing

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

programs, the Windblown-Young Agreement provides for author royalties of 10% of net sales revenue for hardcover and 5% for all other editions. Finally, Windblown acquired the merchandising rights to the Book, and Young is to receive a royalty of 10% of the net sales revenue received by Windblown in connection with such merchandising.

20. Hachette was not a party to the Windblown-Young Agreement and was not a participant in the negotiations between Windblown and Young concerning its terms and conditions.

21. On May 13, 2008, Windblown entered into the Hachette-Windblown Agreement. The Hachette-Windblown Agreement provides that Windblown will supply all information necessary for Hachette to compute author royalties arising out of Hachette's sales and licenses under said agreement. The Hachette-Windblown Agreement further provides that Hachette is responsible for reporting and sending certain author royalty payments directly to Young, Jacobsen, and Cummings and reporting to Windblown the amounts due with respect to such author royalty payments, all in accordance with information provided by Windblown.

22. The Hachette-Windblown Agreement requires that Hachette prepare a quarterly "Statement" for the Book setting forth the "Net Copies" of the Book (the number of copies shipped by Hachette minus actual and estimated returns) and specified "Defined Proceeds." "Defined Proceeds" for the Book are determined by calculating all Revenues received by Hachette minus all "Expenses" incurred by Hachette. "Revenues" are defined as all monies received by Hachette from sales or licenses of the Book minus actual returns and a reasonable reserve against future returns, as well as any other monies actually received by Hachette relating directly to the Book. "Expenses" are defined as certain enumerated out-of-pocket expenses incurred by Hachette, including author royalty payments to Young, Jacobsen, and Cummings and Hachette's general distribution services fee (equal to 10% of net sales).

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

7

COMPLAINT-IN-INTERPLEADER

23. If the quarterly Statement reveals a positive balance, the Hachette-Windblown agreement provides that the Defined Proceeds should be divided in the following manner with respect to the Book: Windblown receives 65% of the Defined Proceeds from the first million Net Copies, 60% of the next two million Net Copies, and 50% of all Net Copies thereafter, and Hachette receives the remainder of such Defined Proceeds.

24. Windblown then allocates the Defined Proceeds it receives under the Hachette-Windblown Agreement in accordance with the Windblown-Young Agreement, which requires Windblown to pay Young one-third of the net profits generated by the book for Windblown. Upon information and belief, Jacobsen and Cummings also receive a share of each Defined Proceeds payment.

25. Once the Hachette-Windblown Agreement was in place, Hachette took over primary distribution of the Book around June 2008. The Book became a phenomenal commercial success, and by December 2008, over six million copies had been sold worldwide.

26. Following the extraordinary success of the Book, Young hired an accounting firm to audit Windblown's books and records. Since completing his audit, Young has asserted claims in the State Court Action against Windblown and Hachette that, among other things, he has not been paid a proper share of the Defined Proceeds for prior time periods and has argued that Hachette is equally responsible for these allegedly insufficient payments. Young has alleged that Windblown and Hachette have failed to pay Young an appropriate amount of the Defined Proceeds received by Windblown in at least the following respects:

(a) Windblown improperly characterized a majority of its sales as "high discount sales" in order to pay Young only the 5% or 10% royalty in lieu of a one-third profit share and $.50 per paperback/$1.00 per hardback book royalty. Young alleges that this accounting inequity deprived him of his share of the profit on 75% of the sales Windblown generated in the United States and approximately 27% of

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

8

COMPLAINT-IN-INTERPLEADER

the sales Hachette generated in the United States. Young contends that the "high discount sales" exception in the Windblown-Young Agreement was never intended to cover such a large portion of the book's sales and has resulted in more of the Defined Proceeds being retained by Windblown, Jacobsen, and Cummings than is proper;

(b) Windblown improperly deducted the fixed $.50 per paperback/$1.00 per hardback book royalty for each copy of the Book before calculating Young's share of net profits, and making this deduction decreased the amount of money subject to the one-third profit share. Young contends that the Windblown-Young Agreement entitles him to the $.50 per paperback/$1.00 per hardback book royalty *plus* one-third of the net profits from its distribution; and

(c) Windblown improperly collected a 10% distribution fee off-the-top before calculating Young's share of net profits. Young alleges that no provision of the Windblown-Young Agreement allows Windblown to collect a distribution fee, and the costs of distribution are separately accounted for in the accountings provided by Windblown. Young alleges that Windblown's collection of this distribution fee deprives him of his rightful share of Windblown's net profits.

27. Windblown, Jacobsen, and Cummings disagree with the foregoing contentions and assert that they have paid Young properly pursuant to the Windblown-Young agreement.

28. Hachette is currently in possession of $1,005,496.00 in Funds, which consist of Defined Proceeds under the Hachette-Windblown Agreement for the quarter ending March 31, 2010. The Funds are to be allocated in some manner between Windblown, Jacobsen, Cummings, and Young.

29. Windblown, Jacobsen, and Cummings assert that they are entitled to the full amount of the Defined Proceeds owed under the Hachette-Windblown Agreement, less an amount consistent with how Young has been paid by Windblown to date. Young asserts that he is entitled to a greater share of the

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

9

COMPLAINT-IN-INTERPLEADER

Defined Proceeds than he has received to date, and his resulting action against Windblown and Hachette makes clear that there is a genuine dispute as to what would constitute a proper division of the Funds. As a result, Windblown, Jacobsen, Cummings, and Young have conflicting claims to the same Funds.

30. In light of these adverse claims to the Funds, Hachette has a real and reasonable fear that distributing the Funds would expose Hachette to multiple claims and liabilities. Hachette has a reasonable fear that if it distributes the Funds to Windblown as it has done in the past, Young is likely to assert an additional claim against Hachette that Windblown has paid him an insufficient amount of the Funds. Similarly, if Hachette pays the portion of the Funds demanded by Young to Young, Windblown, Jacobsen, and Cummings are likely to assert a claim against Hachette for some or all of the Funds. Hachette further expects that similar disputes among Young, Windblown, Jacobsen, and Cummings are likely to arise in the future.

## FIRST CLAIM FOR RELIEF

### (Interpleader)

31. Hachette realleges Paragraph 1 through 30, inclusive, as if set forth fully herein.

32. Hachette is now in the possession of $1,005,496.00 in Funds, representing the amount of Defined Proceeds payable to Windblown, and through Windblown to Young, for the quarter ending March 31, 2010.

33. Because of the competing claims set forth above, Hachette is unable to determine the proper payment of the Funds owed and faces the real and reasonable possibility of multiple liabilities if the Funds are distributed without Court direction.

34. Hachette files this interpleader action in good faith and without collusion with any of the parties hereto.

35. Hachette claims no interest in the above-referenced Funds and is a mere stakeholder in this action.

36. Hachette intends to deposit the Funds with the Clerk of this Court.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

10

COMPLAINT-IN-INTERPLEADER

37.  Because of the competing claims to the Funds, Hachette was required to file this action to protect itself from multiple liabilities, and it has incurred and will continue to incur attorneys' fees and costs in connection with this action.

## PRAYER FOR RELIEF

**WHEREFORE**; - Hachette prays as follows:

1. For a Court Order directing deposit of the Funds, to the extent not already deposited, with the Court, and further directing ongoing deposits of future Defined Proceeds owed under the Hachette-Windblown Agreement to the extent such Defined Proceeds are due to Windblown, Jacobsen, Cummings, or Young;

2. For this Court to determine how the Funds, as well as any future Defined Proceeds owed under the Hachette-Windblown Agreement, are to be distributed as between the Defendants-in-Interpleader;

3. For Defendants-in-Interpleader and each of them, their agents, attorneys or assigns, to be enjoined and restrained temporarily, and upon a full hearing, that the injunction be made perpetual, restraining each of them, their agents, attorneys or assigns, from instituting any suit at law or equity, or action of any kind whatsoever, against Hachette with respect to the payment of the Funds or any future Defined Proceeds deposited;

4. That upon deposit of the Funds, and any deposits of future Defined Proceeds, following the filing of this Complaint-in-Interpleader, and upon service of the Defendants-in-Interpleader herein, that Hachette be discharged of all liability with respect to the payment or distribution of the Funds and any future Defined Proceeds deposited;

5. For Hachette to be awarded its costs and reasonable attorneys' fees in conjunction with this action to be paid from the amount in dispute deposited; and

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067
51142.1
11
COMPLAINT-IN-INTERPLEADER

6.  For such other and further relief as the Court deems reasonable and just under the circumstances.

Dated: May 11, 2010

KENDALL BRILL & KLIEGER LLP

By: _____
Philip M. Kelly

Attorneys for Plaintiff-in-Interpleader
HACHETTE BOOK GROUP, INC.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

51142.1

12

COMPLAINT-IN-INTERPLEADER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

**CV10- 3534 MMM (JEMx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Richard B. Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, CA 90067
Telephone: 310.556.2700

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HACHETTE BOOK GROUP, INC., a Delaware Corporation,<br><br>PLAINTIFF(S)<br><br>v.<br><br>WINDBLOWN MEDIA, INC., a California Corporation; WAYNE JACOBSEN; BRAD CUMMINGS; WILLIAM PAUL YOUNG,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV 10-3534 MMM (JEMx)<br><br>SUMMONS |

TO:   DEFENDANT(S): Windblown Media, Inc.; Wayne Jacobsen; Brad Cummings; William Paul Young

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Richard B. Kendall_, whose address is _10100 Santa Monica Blvd., Suite 1725, Los Angeles, California, 90067_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _May 11, 2010_

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Hachette Book Group, Inc.

**DEFENDANTS**
Windblown Media, Inc.; Wayne Jacobsen, Brad Cummings, William Paul Young

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Richard B. Kendall, Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725, Los Angeles, California 90067
(310) 556-2700 (Tel.); (310) 556-2705 (Fax)

Attorneys (If Known)
Martin Singer, Lavely & Singer (for Windblown Media, Inc., Wayne Jacobsen, and Brad Cummings)
Michael Anderson, Loeb & Loeb (for William Paul Young)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:** JURY DEMAND: ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No            ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint-in-Interpleader under F.R.C.P. Rule 22 and 28 U.S.C. Section 1335.

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☒ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury- Med Malpractice
☐ 365 Personal Injury- Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☒ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: _____ CV10-03534
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                CIVIL COVER SHEET                Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): Wayne Jacobsen and Brad Cummings v. William Paul Young, Case No. CV10-3246-JFW (JCX)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York (Hachette Book Group, Inc.) |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura County (Windblown Media, Inc., Wayne Jacobsen, Brad Cummings) | Oregon (William Paul Young) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura County | New York; Oregon |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _/s/_ Date May 11, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |