1  LOEB & LOEB LLP
   MICHAEL ANDERSON (State Bar No. 143168)
2  manderson@loeb.com
   DONALD A. MILLER (State Bar No. 228753)
3  dmiller@loeb.com
   LOEB & LOEB LLP
4  10100 Santa Monica Boulevard, Suite 2200
   Los Angeles, California 90067-4120
5  Telephone:  310-282-2000
   Facsimile:  310-282-2200
6
   Attorneys for Defendant
7  WILLIAM PAUL YOUNG

8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10
                          WESTERN DIVISION
11

12 | HACHETTE BOOK GROUP, INC., a Delaware Corporation, | Case No. CV 10-3246 JFW (JCx) |
|---|---|
|    Plaintiff-in-Interpleader, | Assigned to the Hon. John F. Walter |
|    v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YOUNG'S MOTION TO DISMISS PLAINTIFF HACHETTE BOOK GROUP, INC.'S COMPLAINT, OR, IN THE ALTERNATIVE, STAY THE ACTION** |
| WINDBLOWN MEDIA, INC., a California corporation, WAYNE JACOBSEN, BRAD CUMMINGS, WILLIAM PAUL YOUNG, | |
|    Defendants-in-Interpleader. | |
| | *[Notice of Motion and Motion; Request for Judicial Notice; Declaration of Michael T. Anderson]* |
| | Date:  July 19, 2010<br>Time:  1:30 p.m.<br>Courtroom: 16 |

LA2056338.2
214183-10001

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND...................................3

    A. Mr. Young, Windblown & Hachette ......................................................3

    B. Young Files the State Court Action.......................................................4

    C. Defendants Unsuccessfully Demur and Move to Strike Mr. Young's Complaint ..........................................................................5

    D. Windblown Files Its Cross-Complaint in the State Court Action ........................................................................................................5

    E. Discovery in the State Court Action ......................................................5

    F. The Federal Court Filings ........................................................................5

        1. Jacobsen and Cummings' Complaint. ......................................5

        2. Hachette's Interpleader..............................................................6

III. HACHETTE'S INTERPLEADER SHOULD BE DISMISSED PURSUANT TO THE YOUNGER OR COLORADO RIVER ABSTENTION DOCTRINES ..................................................................7

    A. Hachette's Interpleader Should Be Dismissed Pursuant To The Younger Abstention Doctrine........................................................7

    B. Hachette's Interpleader Should Be Dismissed Pursuant to the Colorado River Abstention Doctrine. .............................................9

    C. Hachette's Interpleader Should Be Dismissed, Not Stayed................12

IV. CONCLUSION.................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

American Int'l Underwriters (Phillipines), Inc. v. Continental Ins. Co.,
  843 F.2d 1253 (9th Cir.1988) ...................................................................... 10

Beltran v. State of Calif.,
  871 F.2d 777 (9th Cir. 1988) ................................................................... 2-4, 6

Bradley v. Kochenash,
  44 F.3d (2nd Cir. 1995) .......................................................................... 2, 12

Colorado River Water Conservation Dist. v. United States,
  424 U.S. 800 (1976) ............................................................................. Passim

Fireman's Fund Ins. Co. v. Quackenbush,
  87 F.3d 290 (9th Cir. 1996) ..................................................................... 2, 10

Gilbertson v. Albright,
  381 F.3d 965 (9th Cir. 2004) ......................................................................... 9

Juidice v. Vail,
  430 U.S. 327 (1977) ....................................................................................... 9

Middlesex County Ethics Committee v. Garden State Bar Ass'n,
  457 U.S. 423 (1982) .............................................................................. 1, 7, 9

Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,
  460 U.S. 1 (1983) ................................................................................... 2, 9-11

Nakash v. Marciano,
  882 F.2d 1411 (9th Cir. 1989) ................................................................. 2, 10

New Orleans Public Service, Inc. v. Council of New Orleans,
  491 U.S. 350, 370 (1989) ............................................................................... 9

Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v. Nelson,
  477 U.S. 619 (1986) .................................................................................. 7-9

Pennzoil Co. v. Texaco, Inc.,
  481 U.S. 1 (1987) ........................................................................................... 8

**Page(s)**

Quackenbush v. Allstate Ins. Co.,
  517 U.S. 706 (1996) ..................................................................................... 2, 12

Romine v. Compuserve Corporation,
  160 F.3d 337 (6th Cir.1998) ............................................................................... 11

Younger v. Harris,
  401 U.S. 37 (1971) ....................................................................................... Passim

**STATUTES**

C.C.P. § 386 ..................................................................................................... 9

**OTHER AUTHORITIES**

William W. Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial
  § 2:1291.1a (The Rutter Group 2009) ................................................................. 7

William W. Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial
  § 2:687.1 (The Rutter Group 2009) ..................................................................... 9

William W. Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial
  § 10:59 (The Rutter Group 2009) ...................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant William Paul Young is the author of *The New York Times* bestselling Christian novel *The Shack*.  In November 2009, Mr. Young filed a Complaint in California state court (the "State Court Action") against its publishers Hachette Book Group, Inc. ("Hachette") and Windblown Media, Inc. ("Windblown") for failing to properly account and pay to him his contractual royalty and share of net profits for the novel.  After losing three related pleading motions in the State Court Action, in which the State Court analogized Defendants' accounting practices as "Hollywood accounting" (RJN ¶ 2, Ex. 2), Hachette hired separate counsel.  Dissatisfied with the results to date in the State Court Action, Hachette has filed a Complaint-in-Interpleader, seeking to deposit three months worth of net proceeds from the novel into a federal court account, and asking this federal court, not the state court, to determine how the proceeds should be allocated among the parties.  Hachette's Complaint-in-Interpleader ("Interpleader")[1] is a transparent attempt at forum shopping, and will lead to piecemeal, inconsistent litigation between the State Court Action and this action.  Hachette's Interpleader should be dismissed pursuant to both Younger and Colorado River abstention principles.

The Court should dismiss the Interpleader pursuant to the Younger abstention doctrine, because the State Court Action (1) was already pending for months before Hachette filed the Interpleader; (2) provides Hachette an adequate opportunity to raise any claims; and (3) serves an important state interest, namely, the ability of a state court to adjudicate claims without federal court interference.  Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).

---

[1] "Interpleader" refers to Hachette's First Amended Complaint-In-Interpleader.

Similarly, and alternatively, pursuant to the Colorado River doctrine, the Court, in an exercise of "wise judicial administration," should dismiss the Interpleader since it is substantially similar to the claims in the State Court Action and would lead to inconsistent, piecemeal litigation in two forums. Under Hachette's chaotic approach, the State Court Action would be adjudicating the amounts owed to Mr. Young by Defendants Hachette and Windblown for the period May 2007 to December 2009 and adjudicating additional amounts owed to Mr. Young over and above the interpleaded funds from January 2010 forward at the same time as this Court would adjudicate how the interpleaded funds from January 2010 forward should be allocated among the parties. The potential for duplicative litigation and inconsistent rulings is enormous. The Colorado River abstention doctrine was designed to avoid such chaos. Virtually all of the Colorado River factors argue for dismissal – i) the order in which the forums obtained jurisdiction, ii) the fact that state law controls, iii) the existence of a satisfactory state interpleader remedy for Hachette, iv) the substantial similarity, if not identity, of the two actions, v) Hachette's forum shopping, and vi) the desirability of avoiding piecemeal litigation all argue for abstention. See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983), Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989), Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d 290 (9th Cir. 1996) (listing factors to apply in Colorado River abstention analysis).

Since Hachette's Interpleader seeks to invoke this Court's equitable jurisdiction, the proper remedy upon finding that Younger or Colorado River abstention principles apply is dismissal of the action rather than a stay. Bradley v. Kochenash, 44 F.3d, 166, 168 (2nd Cir. 1995) (interpleader is an equitable proceeding); Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 717-722 (1996) (when relief sought is equitable, courts have discretion to dismiss claim); Beltran v. State of Calif., 871 F.2d 777, 782 (9th Cir. 1988) (Younger abstention requires dismissal of action).

1   For all of these reasons, therefore, this Court should dismiss Hachette's
2 Interpleader.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Mr. Young, Windblown & Hachette.

Mr. Young is the author of *The New York Times* bestseller *The Shack*, a Christian novel which explores a father's coming to terms with the murder of his daughter and his reawakened relationship with God. Defendant Windblown is a small Christian publishing house based in Ventura County, California. Windblown began to publish and distribute *The Shack* in 2007. On May 10, 2008, Windblown and Mr. Young entered into a written Publishing Contract pursuant to which Windblown was authorized to publish the novel throughout the world. Windblown thereafter entered into a May 13, 2008 Publishing Co-Venture Agreement with larger New York based publisher Hachette pursuant to which Hachette was authorized to distribute the work throughout the world. See Complaint of William P. Young [Declaration of Michael T. Anderson ("Anderson Decl."), Ex. A; Request for Judicial Notice ("RJN"), Ex. A] ¶¶ 12-13.

Mr. Young is entitled to be paid two revenue streams from publication of his work. First, Mr. Young receives a fixed per book royalty of $0.50 per paperback/$1.00 per hardback copy sold in the United States. Young Compl., Ex. A, ¶ 3 (a). This amount has historically been paid directly by Hachette to Mr. Young. Interpleader, ¶ 21. Second, Mr. Young receives a one-third share of net profits generated by the work by the publisher. Id. Historically, Mr. Young's share of profits is calculated and paid in two steps: i) Hachette provides a distribution statement to Windblown showing revenues and expenses it incurred in distributing the work and pays Windblown its share of Defined Proceeds set forth in the Windblown-Hachette Publishing Co-Venture Agreement, and ii) Windblown then takes this information, prepares its accounting encompassing both Hachette and Windblown activity and expenses, and delivers an accounting statement to Mr.

Young along with payment of what it calculates is Mr. Young's share of net profits. Id. ¶¶ 22-24.

### B. Young Files the State Court Action.

In November 2009, after an audit of Windblown's financial records was performed, Mr. Young filed a complaint against Windblown and Hachette in California Superior Court, Ventura County, Case No. 56-2009-00362329 (the "Young Complaint"). RJN ¶ 1, Ex. 1; see also Anderson Decl. ¶ 2, Ex. 1. In the Young Complaint, Mr. Young alleged that Defendants had engaged in a variety of improper accounting practices designed to reduce both his per book royalty and his share of net profits, including, but not limited to: (i) excluding nearly 40% of all sales from the calculation of Mr. Young's share of profits and per book royalty by designating the sales "high discount sales;" (ii) paying themselves a 10% distribution fee nowhere authorized by the Publishing Contract, (iii) refusing to pay Mr. Young a share of profits earned by Hachette, (iv) deducting an inflated return reserve of $4.2 million despite the work's low 1.2% return history, and (v) deducting the per book royalty paid by Mr. Young before calculating net profits. Young Complaint ¶¶ 16-20. Mr. Young claimed that defendants' accounting improprieties have deprived him of over $8 million through December 2008 alone. Id. ¶ 2. Notably, Mr. Young's Complaint alleged that not only was his share of net profits understated, but his per book royalty was as well. Additionally, Mr. Young alleged that not only Windblown's accounting was improper but Hachette's as well. Id., ¶¶ 17-20.[2]

---

[2] Mr. Young, for instance, alleges that Hachette has also improperly deducted a 10% distribution fee it paid itself, imposed an inflated return reserve, refused to pay the per book royalty on "high-discount" sales, and refused to pay Mr. Young a share of profit it earned on the novel. Id.

## C. Defendants Unsuccessfully Demur and Move to Strike Mr. Young's Complaint.

Both Windblown and Hachette each filed a demurrer and motion to strike the Young Complaint. The Court, noting that "Publishers Windblown/Hachette, melodramatically arguing on demurrer and MTS that the author's complaint seeking only compensatory damages and an accounting is 'a shocking display of greed, overreaching and ingratitude,'" analogized Defendants' accounting practices to "Hollywood bookkeeping," found that the Complaint "was very specifically pleaded," and denied all of the Defendants' Motions. RJN ¶ 2, Ex. 2, Ruling; see also Anderson Decl. ¶ 3 Ex. 2.

## D. Windblown Files Its Cross-Complaint in the State Court Action.

In March 2010, Defendant Windblown then filed its Cross-Complaint in the State Court Action against Mr. Young. Windblown alleged that Mr. Young has breached its obligation to it by "failing to act in concert with Windblown in connection with the disposition of the motion picture rights to the Book," refusing "to assign the motion picture rights to the Book to The Shack Movie, LLC," and requested damages "in excess of Five Million Dollars." RJN ¶ 3, Ex. 3, Cross-Compl. ¶¶ 37, 39; see also, Anderson Decl. ¶ 4, Ex. 3, ¶¶ 37, 39.

## E. Discovery in the State Court Action.

Defendants Windblown and Hachette have also served substantial discovery on Mr. Young, requiring him to respond to numerous interrogatories and to produce over 1,800 pages of documents. Windblown and Hachette have noticed his deposition as well. Mr. Young, in turn, is actively involved in document discovery now with Windblown and Hachette. Anderson Decl. ¶ 5.

## F. The Federal Court Filings

### 1. Jacobsen and Cummings' Complaint.

Plaintiffs' Jacobsen and Cummings, the two principals of Windblown, on April 29, 2010, filed a Complaint in this Court seeking a determination that they are

somehow the joint authors of *The Shack* and requesting monetary damages for Mr. Young's conduct in disposing of the motion picture rights to the novel. Case No. CV 10-3246 JFW. The allegations in the Windblown Cross-Complaint in the State Court Action and the federal court Complaint are virtually identical and are subject to Mr. Young's pending Motion to Dismiss.

### 2. Hachette's Interpleader.

Following suit, Hachette filed its recent Interpleader in federal court. It seeks to deposit the share of "net proceeds" payable by it to Windblown for the first quarter of 2010 pursuant to the Windblown-Hachette Publishing Co-Venture Agreement. Interpleader ¶¶ 5, 28. The amount sought to be deposited is <u>after</u> Hachette has unilaterally determined what revenue to include and expenses to deduct with respect to its distribution of the novel. <u>Id</u>., ¶ 5 ("Hachette is also obligated to send payments to Windblown of certain 'Defined Proceeds' based on revenues generated by Hachette from the Book, net of the author royalty payments and certain deductible expenses incurred by Hachette."); ¶ 22.

The fund sought to be interpleaded is only a small subset of the amounts at stake in the State Court Action. First, it only includes the amount of "Net Proceeds" from the first quarter of 2010 forward – Mr. Young alleges that Windblown and Hachette have improperly accounted for his share of royalties and net profits from May 2007 forward. The proceeds from 2007, 2008, and 2009, of course, are not included in the Interpleader amount. Second, the amount sought to be interpleaded is only Windblown's share of "Net Proceeds"; it does not include any amounts for the additional per-book-fixed-royalty to which Mr. Young claims he is entitled that is supposed to be paid by Hachette directly. Third, the amount sought to be interpleaded is the amount of "Net Proceeds" Hachette claims it is supposed to remit to Windblown after it has unilaterally determined the revenue to include and expenses to deduct in arriving at the "Net Proceeds" amount for Q1 2010. It does not include the amounts Mr. Young claims Hachette has improperly not included in

revenue or the amounts Mr. Young claims Hachette has improperly deducted in expenses.

### III. HACHETTE'S INTERPLEADER SHOULD BE DISMISSED PURSUANT TO THE <u>YOUNGER</u> OR <u>COLORADO RIVER</u> ABSTENTION DOCTRINES.

Hachette's Interpleader is an attempt to remove a slice of the case currently pending in the State Court Action and relitigate it in federal court. Hachette's Interpleader should be dismissed pursuant to the <u>Younger</u> and/or <u>Colorado River</u> abstention doctrines.

#### A. Hachette's Interpleader Should Be Dismissed Pursuant To The <u>Younger</u> Abstention Doctrine.

<u>Younger</u> abstention, originating from <u>Younger v. Harris</u>, 401 U.S. 37, 49-53 (1971), is a doctrine of equitable judicial restraint, not a jurisdictional limitation. William W. Schwarzer, et al., <u>Cal. Practice Guide: Fed. Civ. Pro. Before Trial</u> § 2:1291.1a (The Rutter Group 2009). The court's discretion to abstain from hearing a claim under <u>Younger</u> "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." <u>Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v. Nelson</u>, 477 U.S. 619, 626 (1986).

Federal courts may abstain from hearing a claim where a state court proceeding (1) is pending when the federal action is filed; (2) implicates important state interests; and (3) provides adequate opportunity to raise the claims alleged. <u>Middlesex County Ethics Committee v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982). If these three <u>Younger</u> requirements are satisfied, federal court abstention is <u>required</u>, absent extraordinary circumstances such as bad faith, harassment, or a patently unconstitutional state statute. <u>Middlesex County Ethics Comm.</u>, 457 U.S.

at 435, 437; <u>Younger</u>, 401 U.S. at 53-54.  All of these elements are satisfied in this case, justifying the Court's exercise of abstention.

First, the State Court Action – <u>Young v. Windblown Media, Inc., et al.</u> – was pending when Hachette filed the Interpleader.  Young filed his complaint in the State Court Action on November 19, 2009.  Hachette, after losing their pleading motions attacking Young's complaint, filed their Complaint-in-Interpleader initially on May 11, 2010 and a subsequent First Amended Complaint-in-Interpleader on June 3, 2010.  The State Court Action is still pending.  Defendants have served extensive discovery requests to Mr. Young and third party witnesses, Mr. Young has produced voluminous documentation in response, and Defendants have noticed the deposition of Mr. Young.  Anderson Dec., ¶ 4.

Second, the State Court Action implicates important state interests.  For purposes of <u>Younger</u> abstention, a wide variety of state interests qualify as "important."  <u>Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v. Nelson</u>, 477 U.S. 619, 626 (1986).  For example, an important state interest includes the ability of state courts to adjudicate and enforce their orders.  See <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 13-14 (1987) (Younger abstention proper based on important state interest in enforcing state court orders and judgments including orders forcing persons to transfer property).  Indeed, both this Circuit and the U.S. Supreme Court have held that the state's interest in administering cases brought before its courts is at the heart of the comity principle underlying <u>Younger</u> abstention:

> the Court distilled the comity principles that animate abstention – that the state's interest in administration of its judicial system is important, that federal court interference would be an offense to the state's interest, and that such interference would both unduly interfere with the legitimate activities of the state and readily be interpreted as reflecting negatively upon the state court's ability ….

1 Gilbertson v. Albright, 381 F.3d 965, 972 (9th Cir. 2004) (citing Juidice v. Vail 430
2 U.S. 327 (1977)); see also Gilbertson, 381 F.3d at 970 ("the Court observed that
3 Congress over the years has manifested an intent to permit state courts to try state
4 cases free of federal interference."). Referencing Middlesex and Dayton Christian
5 Schools, the Supreme Court noted that "judicial proceedings or disciplinary
6 proceedings which are judicial in nature are the type of proceeding that does
7 implicate an important state interest." Gilbertson, 381 F.3d at 977 (citing New
8 Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 370 (1989);
9 Middlesex, 457 U.S. at 433-434; and Dayton Christian Schools, 477 U.S. at 627.

10        Third, the State Court Action provides an adequate opportunity for Plaintiffs
11 to litigate their Interpleader. Hachette is already a defendant in the State Court
12 Action and can file a Complaint-In-Interpleader in the state court action pursuant to
13 California's interpleader statute. See C.C.P. § 386. Indeed, Hachette cannot point
14 to any reason why it filed the Interpleader in federal court other than its transparent
15 attempt at forum shopping.

16        **B.    Hachette's Interpleader Should Be Dismissed Pursuant to the**
17        **Colorado River Abstention Doctrine.**

18        Alternatively, this Court should dismiss the Interpleader pursuant to the
19 Colorado River abstention doctrine. In the interest of "wise judicial administration,"
20 federal courts may stay a case where a concurrent state action is pending in which
21 the identical issues are raised. William W. Schwarzer, et al., Cal. Practice Guide:
22 Fed. Civ. Pro. Before Trial § 2:687.1 (The Rutter Group 2009) (citing Colorado
23 River Water Conservation Dist. v. United States, 424 U.S. 800, 815 (1976)). The
24 Colorado River doctrine "give[s] regard to conservation of judicial resources."
25 Colorado River, 424 U.S. at 817.

26        The decision to abstain rests on a "careful balancing" of several factors as
27 they apply in a given case. Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,
28 460 U.S. 1, 16 (1983). For example, in Colorado River the Court examined four

factors to determine whether staying proceedings was appropriate: (1) whether either court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation to prevent conflicting results; and (4) the order in which the forums obtained jurisdiction. See 424 U.S. at 818.  In Moses Cone, the Court articulated two more considerations; (5) whether state or federal law controls; and (6) whether the state proceeding is adequate to protect the parties' rights. See 460 U.S. at 25-26, 103 S.Ct. at 941-42.  In addition, courts have recognized an additional factor:  (7) whether the state and federal suits are substantially similar. Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).  Finally, in Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d 290 (9th Cir. 1996), the court recognized that (8) evidence of forum-shopping can justify Colorado River abstention.  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1257 (9th Cir.1988) (quoting Moses Cone, 460 U.S. at 16).

In this case, the vast majority of factors weighs heavily in favor of abstention.  First, the state court forum obtained jurisdiction first, in November 2009, when Young filed his complaint.  Hachette, after substituting in new counsel, filed the federal Interpleader in May 2010, six months later, after substantial litigation of the case in the state court.[3]

Second, the state and federal cases are substantially similar.  Hachette's Interpleader raises identical issues pending in the State Court Action, namely, the proper accounting for the proceeds from *The Shack* between the author and the two publishers.

---

[3] The existence of a res and the convenience of the forum are neutral or non-applicable factors.  Although Hachette is attempting to deposit Windblown's share of net proceeds as a res in this Court, this Court has yet to rule on whether an interpleader action is viable in this Court.

1   Third, there is a substantial risk of conflicting result if piecemeal litigation is
not avoided, the paramount concern of <u>Colorado River</u> abstention doctrine.  <u>See</u>
<u>Romine v. Compuserve Corporation</u>, 160 F.3d 337, 341 (6th Cir.1998) ("In *Moses*
*H. Cone*, the Supreme Court noted 'the consideration that was paramount in
*Colorado River* itself – the danger of piecemeal litigation.'  460 U.S. at 19") (federal
court security class action stayed pending resolution of parallel state class action).
The state court might make certain findings concerning the proper accounting for
the net profits from the novel for 2007 to December 2009, while the federal court
might make inconsistent rulings for the first quarter of 2010 forward.  The state
court might find that certain deductions taken by Hachette for the first quarter of
2010 before arriving at net proceeds are improper – affecting the amounts Hachette
is attempting to deposit in Interpleader.  The same witnesses, facts and chronology
would have to be tried in both courtrooms, perhaps at the same time.  Hachette's
procedural approach to its Interpleader invites disaster.  This Court should avoid it.

Fourth, there is evidence of forum shopping.  Hachette's interpleader was
only filed after the substitution of new counsel and losing several related pleading
motions in the State Court.

Fifth, the resolution of the claim involves the application of California
contract law, not federal law.  The May 10, 2008, Publishing Contract contains a
California choice of law clause.  Young Complaint, Ex. A, ¶ 23.

Sixth, the State Court Action is adequate to protect Hachette's rights.
Hachette can easily file its Interpleader in the State Court Action.

Thus, in order to avoid the consequences of duplicative litigation proceeding
in both state court and federal court on similar claims at the same time, this Court
should dismiss the second claim for relief for breach of contract pursuant to the
<u>Colorado River</u> doctrine.

### C. Hachette's Interpleader Should Be Dismissed, Not Stayed.

When the relief sought by a federal action is equitable in nature, the federal court may dismiss the case based on abstention principles. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996). Hachette's Interpleader constitutes an equitable action. Interpleader is "an equitable proceeding governed by equitable principles." William W. Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial § 10:59, p. 10-25 (The Rutter Group 2009); Bradley v. Kochenash, 44 F.3d 166, 168 (2d Cir. 1995). This Court, therefore, should dismiss, rather than stay, Hachette's equitable Interpleader action.

There is no common sense reason to stay the Interpleader. The State Court Action will determine all relevant issues surrounding the accounting to Mr. Young of his share of net profits and his per book royalty from inception to the date of trial. There will be nothing for this Court to accomplish or determine in staying the action. For example, there is no statute of limitations issues with respect to Hachette's Interpleader, nor is there any federal claim Hachette has raised which cannot be raised in the underlying State Court Action. Dismissal, therefore, is the appropriate remedy.

## IV. CONCLUSION

Hachette's Interpleader is a belated attempt by its new counsel to transfer a subset of the issues pending in the State Court Action to this Court for determination. In order to avoid the inevitable prospect of duplicative litigation and inconsistent adjudication, this Court should dismiss the Interpleader pursuant to Younger and Colorado River abstention principles.

Dated: June 21, 2010

LOEB & LOEB LLP
MICHAEL T. ANDERSON
DONALD A. MILLER

By: /s/ Michael T. Anderson
Michael T. Anderson
Attorneys for Defendant
William Paul Young