1  KENDALL BRILL & KLIEGER LLP
   Richard B. Kendall (90072)
2    rkendall@kbkfirm.com
   Philip M. Kelly (212714)
3    pkelly@kbkfirm.com
   Ashlee R Lynn (261002)
4    alynn@kbkfirm.com
   10100 Santa Monica Blvd., Suite 1725
5  Los Angeles, California  90067
   Telephone:  310.556.2700
6  Facsimile:  310.556.2705

7  Attorneys for Plaintiff-in-Interpleader

8

9            UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12 HACHETTE BOOK GROUP, INC.,          Case No. CV10-03534 JFW (JCx)

           Plaintiff-in-Interpleader,      **PLAINTIFF HACHETTE BOOK
13                                          GROUP, INC.'S OPPOSITION TO
        v.                                  DEFENDANT YOUNG'S MOTION
14                                          TO DISMISS**
   WINDBLOWN MEDIA, INC. a
15 California Corporation; WAYNE
   JACOBSEN; BRAD CUMMINGS;               The Honorable John F. Walter
16 WILLIAM PAUL YOUNG,

17           Defendants-in-               Date:        July 19, 2010
             Interpleader.                Time:        1:30 p.m.
18                                        Courtroom:   16

19                                        [*Filed concurrently with the
                                          Declaration of Philip M. Kelly*]
20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

    A.   *The Shack* And The Formation Of Windblown Media ........................ 3

    B.   Young, Jacobsen, And Cummings Seek Fulfillment Services For The Book And Enter Into The Windblown-Young Agreement ............ 4

    C.   The Hachette-Windblown Agreement ................................................. 5

    D.   Numerous Disputes Arise Between The Parties .................................. 7

    E.   Hachette Has Interpleaded Funds To Be Split In Some Manner Between Young, Windblown, Jacobsen, And Cummings .................... 8

    F.   This Court Ordered That The Funds Be Deposited With The Court Clerk And The Court Has Taken Control Over The Funds ........ 8

III. ARGUMENT ............................................................................................ 9

    A.   Federal Interpleader Is The Proper Procedure To Resolve The Competing Claims To The Funds ...................................................... 9

    B.   *Younger* Abstention Is Inappropriate In This Case ........................... 10

        1.   This Interpleader Action Will Resolve Issues That Are Not Encompassed Within The State Court Action ........................... 11

        2.   This Case Does Not Implicate A Vital State Interest ............... 12

        3.   The State Action Does Not Provide Hachette With An Adequate Opportunity For Relief ............................................. 14

        4.   This Interpleader Action Would Neither Enjoin, Nor Have The Practical Effect Of Enjoining, The State Court Action ....... 15

    C.   The *Colorado River* Abstention Doctrine Does Not Justify Staying Or Dismissing This Action ................................................... 16

        1.   The State Court Action fails to meet the threshold requirement of being a parallel proceeding ............................... 16

        2.   Even if the *Colorado River* doctrine applies, the factors weigh heavily in favor of this Court continuing to exercise jurisdiction over this Interpleader Action .................................. 17

            (a)   This Court has already assumed jurisdiction over the Funds. ................................................................................. 18

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

(b)    The federal forum is convenient.......................................18

(c)    There are no exceptional circumstances here that justify special concerns about piecemeal litigation..........19

(d)    The pendency of the State Court Action does not warrant abstention ............................................................19

(e)    This Court is fully capable of resolving the legal issues involved in this Interpleader Action ......................20

(f)    The State Court Action is inadequate to protect Hachette's rights.............................................................20

(g)    Hachette has not engaged in forum shopping .................21

IV.    CONCLUSION ................................................................22

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

ii

## TABLE OF AUTHORITIES

**Page**

## CASES

*AmerisourceBergen Corp. v. Roden*,
495 F.3d 1143 (9th Cir. 2007)....................................................10, 12, 14, 15

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ...................................................................................passim

*Gilbertson v. Albright*,
381 F.3d 965 (9th Cir. 2004) ...............................................................................15

*Green v. City of Tucson*,
255 F.3d 1086 (9th Cir. 2001) (en banc) ............................................................15

*Holder v. Holder*,
305 F.3d 854 (9th Cir. 2002)..................................................................17, 19, 20

*In re Republic of Philippines*,
309 F.3d 1143 (9th Cir. 2002) ...........................................................................1, 9

*Minnesota Mutual Life Insurance Co. v. Ensley*,
174 F.3d 977 (9th Cir. 1999).............................................................................11

*Mobil Oil Corp. v. City of Long Beach*,
772 F.2d 534 (9th Cir. 1985)............................................................................2, 10

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1 (1983) .............................................................................................17, 21

*Murphy v. Travelers Insurance Co.*,
534 F.2d 1155 (5th Cir. 1976)...............................................................................10

*Nakash v. Marciano*,
882 F.2d 1411 (9th Cir. 1989)...............................................................................16

*National Union Fire Insurance Co. of Pittsburgh v. Karp*,
108 F.3d 17 (2d Cir. 1997) .....................................................................................16

*Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*,
477 U.S. 619 (1986) ...............................................................................................13

*Pennzoil Co. v. Texaco, Inc.*,
481 U.S. 1 (1987) .............................................................................................12, 13

*Snodgrass v. Provident Life & Accident Insurance Co.*,
147 F.3d 1163 (9th Cir. 1998)...........................................................................2, 16

*Texas v. Florida*,
306 U.S. 398 (1939) ............................................................................................1, 9

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

iii

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

*Travelers Indemnity Co. v. Madonna*,
    914 F.2d 1364 (9th Cir. 1990)...........................................................18, 19, 20

*United States v. Morros*,
    268 F.3d 695 (9th Cir. 2001)...........................................................19

*Younger v. Harris*,
    401 U.S. 37 (1971) ...........................................................2

**<u>STATUTES</u>**

28 U.S.C. § 1335...........................................................................1

28 U.S.C. § 2361...........................................................................14

43 U.S.C. § 666...........................................................................19

California Code of Civil Procedure § 2026.010...........................................18, 19

California Code of Civil Procedure § 386(f)...........................................14

**<u>RULES</u>**

Federal Rule of Civil Procedure 45(b)(2)...........................................18

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

iv

# I.    <u>INTRODUCTION</u>

Defendant-In-Interpleader William Paul Young has moved to dismiss the Complaint-In-Interpleader of Hachette Book Group, Inc. ("Hachette"), arguing that this Court should take the extraordinary step of surrendering its jurisdiction over this federal interpleader action (the "Interpleader Action") pursuant to the *Younger* or *Colorado River* abstention doctrines because a related action is pending in state court.  As detailed below, Young satisfies neither the exacting requirements for abstention under *Younger* nor the "exceptional circumstances" for abstention under *Colorado River*.  Jurisdiction in this Court is therefore proper, and Young's motion should be denied.

Hachette has interpleaded $990,182.35 with this Court that is to be allocated between Defendants-In-Interpleader Young, Windblown Media, Inc. ("Windblown"), Wayne Jacobsen, and Brad Cummings.  As a result of numerous disputes between the parties—evidenced by the pending state and federal actions— the Defendants-In-Interpleader have competing claims to these funds.  In light of these adverse claims, Hachette has a real and reasonable fear that distributing the funds would expose Hachette to multiple claims and liabilities and has thus availed itself of the federal interpleader statute, 28 U.S.C. § 1335, which confers jurisdiction on this Court to resolve actual and potential adverse claims to the funds and to avoid the vexation of multiple lawsuits by resolving all claims to particular funds in one proceeding.  *See Texas v. Florida*, 306 U.S. 398, 406–07 (1939); *In re Republic of Philippines*, 309 F.3d 1143, 1153 (9th Cir. 2002).

The fact that related actions are pending in state and federal courts does not divest this Court of jurisdiction over the Interpleader Action.  Rather, where state and federal courts have concurrent jurisdiction over related matters, the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1   Supreme Court has explained that because federal courts have a "virtually

2   unflagging obligation" to exercise the jurisdiction conferred on them, abstention is

3   appropriate only under exceptional circumstances.  *Id.*; *see also Snodgrass v.*

4   *Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167–68 (9th Cir. 1998).

5        The facts of this case simply do not justify abstention.  First, the mere

6   existence of a state court contract dispute with some overlapping parties and claims

7   is insufficient to warrant the extraordinary measure of staying or dismissing a case

8   under the *Younger v. Harris*, 401 U.S. 37 (1971), abstention doctrine.  Rather, the

9   *Younger* doctrine has been very narrowly construed, and abstention is only

10  appropriate where the state action involves an interest vital to the operation of the

11  state government.  *See, e.g.*, *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534,

12  542 (9th Cir. 1985).  The issues bearing on allocation of the interpleaded funds

13  clearly do not implicate any vital state interest.  Young's outlandish contention that

14  a vital state interest is implicated merely because the disposition of the interpleaded

15  funds hinges on issues of state contract law, some of which are also presented in a

16  pending state action, is certainly wrong:  if it were that easy to invoke *Younger*

17  abstention, then abstention could be invoked in favor of pending state proceedings

18  in every diversity or supplemental-jurisdiction case.  Moreover, Young cannot

19  satisfy the additional requirements for *Younger* abstention:  (i) the state court

20  proceeding would not provide Hachette with an adequate opportunity to raise its

21  federal interpleader claim; and (ii) this Interpleader Action would not have the effect

22  of enjoining the state court proceeding.

23        Young's argument that the *Colorado River* doctrine justifies abstention is

24  similarly without merit.  Here, the state court proceeding is not even the type of

25  "parallel" proceeding that would merit a *Colorado River* abstention analysis.  And,

26  even if the *Colorado River* doctrine did apply, a balancing of the seven *Colorado*

27  *River* factors—particularly in light of the heavy weight to be accorded in favor of

28  this Court's jurisdiction—requires that Young's motion to dismiss be denied.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

2

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Shack* And The Formation Of Windblown Media

Defendants-in-Interpleader Wayne Jacobsen and Brad Cummings are both California-based former pastors, authors and counselors.  First Amended Complaint of Jacobsen and Cummings (hereinafter the "Federal FAC") ¶ 6.  In December 2005, Defendant-in-Interpleader William Paul Young, a resident of Oregon City, Oregon, sent Jacobsen a copy of an unpublished Christian manuscript he had written and solicited Jacobsen's and Cummings' help in rewriting the manuscript.  First Amended Complaint-In-Interpleader ("Interpleader") ¶ 2; Federal FAC ¶ 7.

Throughout much of 2006 and into 2007, Young, Jacobsen, and Cummings rewrote the manuscript into the novel ultimately entitled *The Shack* (hereinafter the "Book").  Federal FAC ¶ 12.  Jacobsen contacted a number of people he knew in the publishing industry in an attempt to find a publisher for the book.  *Id*. ¶ 13.  When no publisher was interested in publishing the Book, Young, Jacobsen, and Cummings agreed that Jacobsen and Cummings would form a publishing company to publish the Book and other works by Jacobsen and Cummings.  *Id*.  Accordingly, in 2007, Jacobsen and Cummings formed Defendant-in-Interpleader Windblown Media, Inc. ("Windblown").  *Id*.

Windblown and Young entered into an oral publishing agreement in or around 2007 by which they agreed that Windblown would publish the Book.  Interpleader ¶ 16.  Under the terms of this oral agreement, Windblown alleges that Young would receive a $.50 per paperback/$1.00 per hardback royalty for each copy of the Book sold.  *Id*.  Windblown would then set aside fifty percent of the revenue received in connection with the Book as "profits" to be shared equally among the Book's co-authors, with Young, Jacobsen, and Cummings each receiving one-third of those profits.  *Id*.  The remaining fifty percent of the revenue received from the exploitation of the Book was set aside for Windblown's operating capital.  *Id*.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**B.** **Young, Jacobsen, And Cummings Seek Fulfillment Services For The Book And Enter Into The Windblown-Young Agreement**

As Windblown's sales of the Book approached one million copies, Young, Jacobsen, and Cummings agreed that Windblown should seek a larger publishing house with the ability to provide fulfillment and related services to meet the overwhelming demand for the Book. *Id.* ¶ 17; Federal FAC ¶ 23. It was as a result of this decision that Windblown came into contact with Hachette, one of the nation's top book publishers and distributors. Interpleader ¶ 17. Young was actively involved in and approved Windblown's decision to enter into a contract with Hachette to provide fulfillment services for the Book. In doing so, Young, along with Cummings and Jacobsen, realized that they would be surrendering up to one-half of the profits from the book to Hachette. *Id.*; Federal FAC ¶ 30. Jacobsen, Cummings, and Young discussed at length the fact that if Windblown were to contract with Hachette, Young, Jacobsen and Cummings would each receive one-sixth rather than one-third of the profits from the Book, with the upside being that there would be a higher volume of sales and the Book would reach a much larger audience. Interpleader ¶ 17; Federal FAC ¶ 32. Young fully understood that he would not be entitled to receive a share of Hachette's profits in connection with the Book. *Id.*

Young, Jacobsen, and Cummings agreed that before entering into an agreement with a third party fulfillment service provider, Windblown and Young would enter into a written publishing agreement. *Id.* ¶ 18; Federal FAC ¶ 24. Accordingly, Young, on the one hand, and Jacobsen on behalf of Windblown, on the other hand, negotiated and jointly drafted the Windblown-Young Agreement dated May 10, 2008. Interpleader ¶ 19; Federal FAC ¶ 24. The Windblown-Young Agreement provides that Young would receive an author royalty of $.50 per paperback/$1.00 per hardback for each copy of the Book sold in the United States, along with one-third of the net profits received by Windblown from Hachette's sales

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

4

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1  of the Book.  Interpleader ¶ 19.  For foreign sales of the Book and certain other

2  products, the author royalty rate is divided such that Young would receive 60%,

3  Jacobsen would receive 20%, and Cummings would receive 20%.  *Id*.  For copies

4  sold at a discount of 55% or greater off the retail price, premiums (defined as

5  promotional items not for individual resale), and copies sold as a result of

6  Windblown's direct marketing programs, the Windblown-Young Agreement

7  provides for author royalties of 10% of net sales revenue for hardcover and 5% for

8  all other editions.  *Id*.  Finally, Windblown acquired the merchandising rights to the

9  Book, and Young is to receive a royalty of 10% of the net sales revenue received by

10  Windblown in connection with such merchandising.  *Id*.

11      Hachette was not a party to the Windblown-Young Agreement and was not a

12  participant in the negotiations between Windblown and Young concerning its terms

13  and conditions.  *Id*. ¶ 20; Federal FAC ¶ 24.

14      **C.**    <u>**The Hachette-Windblown Agreement**</u>

15      On May 13, 2008, Windblown and Hachette entered into the Hachette-

16  Windblown Agreement under which Hachette would provide fulfillment services for

17  the Book.  Interpleader ¶ 21.  The Hachette-Windblown Agreement provides that

18  Windblown will supply all information necessary for Hachette to compute author

19  royalties arising out of Hachette's sales and licenses under said agreement.  *Id*.  The

20  Hachette-Windblown Agreement further provides that Hachette is responsible for

21  reporting and sending certain author royalty payments directly to Young, Jacobsen,

22  and Cummings and reporting to Windblown the amounts due with respect to such

23  author royalty payments, all in accordance with information provided by

24  Windblown.  *Id*.

25      The Hachette-Windblown Agreement requires that Hachette prepare a

26  quarterly "Statement" for the Book setting forth the "Net Copies" of the Book (the

27  number of copies shipped by Hachette minus actual and estimated returns) and

28  identifying the "Defined Proceeds."  *Id*. ¶ 22.  "Defined Proceeds" for the Book are

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

5

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1   determined by calculating all Revenues received by Hachette minus all "Expenses"

2   incurred by Hachette.  *Id.*  "Revenues" are defined as all monies received by

3   Hachette from sales or licenses of the Book minus actual returns and a reasonable

4   reserve against future returns, as well as any other monies actually received by

5   Hachette relating directly to the Book.  *Id.*  "Expenses" are defined as certain

6   enumerated out-of-pocket expenses incurred by Hachette, including author royalty

7   payments to Young, Jacobsen, and Cummings and Hachette's general distribution

8   services fee (equal to 10% of net sales).  *Id.*

9       If the quarterly Statement reveals a positive balance, the Hachette-Windblown

10  Agreement provides that the Defined Proceeds should be divided in the following

11  manner:  Windblown receives 65% of the Defined Proceeds from the first million

12  Net Copies, 60% of the next two million Net Copies, and 50% of all Net Copies

13  thereafter, and Hachette receives the remainder of such Defined Proceeds.  *Id.* ¶ 23.

14      Windblown then allocates the Defined Proceeds it receives under the

15  Hachette-Windblown Agreement in accordance with the Windblown-Young

16  Agreement, which requires Windblown to pay Young one-third of the net profits

17  generated by the book for Windblown.  *Id.* ¶ 24.  Jacobsen and Cummings also

18  receive a share of each Defined Proceeds payment.  *Id.*

19      Once the Hachette-Windblown Agreement was in place, Hachette took over

20  primary distribution of the Book around June 2008.  *Id.* ¶ 25.  The decision for

21  Windblown to contract with Hachette proved to be enormously lucrative for Young.

22  Federal FAC ¶ 34.  After Windblown entered into the Hachette-Windblown

23  Agreement, the Book made it to The New York Times bestseller list, where it has

24  remained for over 100 consecutive weeks.  *Id.*  There are currently over 12 million

25  copies of the Book in print.  *Id.*  To date, Young, a previously unknown and

26  unpublished author, has personally received well in excess of $10.7 million in

27  royalties and profits from the Book, in addition to substantial additional monies he

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

6

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1  has received from speaking engagements and other opportunities resulting from the

2  Book. *Id.*

### D.   Numerous Disputes Arise Between The Parties

4  Jacobsen and Cummings contend that they collaborated to transform Young's

5  manuscript into the Book. Interpleader ¶ 2. Unsatisfied with the credit received for

6  their efforts, Cummings and Jacobsen filed an action against Young in the United

7  States District Court for the Central District of California, Case No. CV10-3246-

8  JFW (JCX) (hereinafter, the "Federal Court Action"), which seeks, among other

9  things, a determination that Jacobsen and Cummings are co-authors of, and

10  therefore have various economic rights in, the Book. *Id.* Jacobsen, Cummings, and

11  Young also dispute in the Federal Court Action (as well as in a state court action, as

12  discussed below) the interpretation of the agreements between the parties. *Id.* ¶ 3.

13  For his part, Young contends that he is entitled to significantly more money

14  from the Book than he has been paid to date. Interpleader ¶ 6. Following the

15  extraordinary success of the Book, Young hired an accounting firm to audit

16  Windblown's books and records. *Id.* ¶ 26. After completing the audit, Young filed

17  an action in Ventura County Superior Court, Case No. 56-2009-00362329-CU-BC-

18  VTA (hereinafter, the "State Court Action"), against both Windblown and Hachette

19  alleging, among other things, that he has not been paid a proper share of the Defined

20  Proceeds and author royalties received by Windblown in prior time periods. *Id.* ¶ 6.

21  Young has asserted that he has the right to have Hachette pay him the larger portion

22  of Defined Proceeds and author royalties to which he claims he is entitled. *Id.*

23  Windblown, Jacobsen, and Cummings disagree with Young's contentions and

24  assert that they have paid Young properly pursuant to the Windblown-Young

25  Agreement. *Id.* ¶ 27. Hachette disagrees with Young's claims against Hachette in

26  the State Court Action, including that Young is entitled to a share of Hachette's

27  separate profits. *Id.* ¶ 6.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

7

The State Court Action is still in the early stages.  A substitute judge denied Hachette's and Windblown's demurrers and motions to strike, but there have been no rulings on the merits of the case.  Mot. at 5; Declaration of Philip M. Kelly ("Kelly Decl.") ¶ 2.  Indeed, the substitute judge refused even to consider the Hachette-Windblown Agreement, which was the basis for the defendants' demurrers.  *Id*.  Discovery thus far in the State Court Action has been minimal. Hachette has not served any discovery and has produced only one document in response to a specific request from Young.  Kelly Decl. ¶ 3.  Windblown has served minimal written discovery but has not produced any documents.  Young has served limited written discovery and produced less than a single box of documents.  *Id*.  No depositions have been taken, and none are currently scheduled.  *Id*. ¶ 4.  The state court has not set any discovery deadlines or a trial date.  *Id*. ¶ 5.

### E.   <u>Hachette Has Interpleaded Funds To Be Split In Some Manner Between Young, Windblown, Jacobsen, And Cummings</u>

Hachette was in possession of $990,182.35, which constitutes Defined Proceeds under the Hachette-Windblown Agreement for the quarter ending March 31, 2010 (hereinafter the "Funds").  The Funds are to be allocated in some manner between Windblown, Jacobsen, Cummings, and Young.  Interpleader ¶ 28. Hachette filed its First Amended Complaint-in-Interpleader on June 3, 2010. (hereinafter the "Interpleader Action.").

### F.   <u>This Court Ordered That The Funds Be Deposited With The Court Clerk And The Court Has Taken Control Over The Funds</u>

On June 3, 2010, this Court ordered that the Funds be deposited with the Clerk of the District Court for the Central District of California.  Order Directing Deposit of Funds Into Court Registry (Docket No. 17).  On June 7, 2010, Hachette deposited the Funds with the Clerk.  Kelly Decl., ¶ 6.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

8

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

III.    **ARGUMENT**

A.    **Federal Interpleader Is The Proper Procedure To Resolve The Competing Claims To The Funds**

Windblown, Jacobsen, and Cummings assert that they are entitled to the full amount of the Defined Proceeds owed under the Hachette-Windblown Agreement, less an amount consistent with how Young has been paid by Windblown to date. Interpleader ¶ 29.  Young asserts that he is entitled to a greater share of the Defined Proceeds than he has received to date, and his resulting action against Windblown and Hachette makes clear that there is a genuine dispute as to what would constitute a proper division of the Funds.  *Id.*  As a result, Windblown, Jacobsen, Cummings, and Young have conflicting claims to the same Funds.  *Id.*

In light of these adverse claims to the Funds, Hachette has a real and reasonable fear that distributing the Funds would expose Hachette to multiple claims and liabilities.  *Id.* ¶ 30.  Hachette has a reasonable fear that if it distributes the Funds to Windblown as it has done in the past, Young is likely to assert an additional claim against Hachette that Windblown has paid him an insufficient amount of the Funds.  *Id.*  Similarly, if Hachette pays to Young the portion of the Funds that Young demands, then Windblown, Jacobsen, and Cummings are likely to assert a claim against Hachette for some or all of the Funds.  *Id.*  Hachette further expects that similar disputes among Young, Windblown, Jacobsen, and Cummings are likely to arise in the future as additional monies become due.  *Id.*

As noted above, federal interpleader is intended to provide stakeholders with precisely the kind of relief Hachette seeks:  protection from the vexation of multiple lawsuits through resolution of all claims to particular funds in one proceeding.  *Texas*, 306 U.S. at 406–07; *In re Republic of Philippines*, 309 F.3d at 1153.  Given the competing claims and the risks of additional actions, Hachette seeks a

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

9

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1  determination of the proper allocation of the Funds[1] as between Windblown,

2  Jacobsen, Cummings, and Young, and a determination of Hachette's responsibilities

3  with respect to the allocation of the Funds.  *Id.* ¶ 7.

4         **B.**    ***Younger* Abstention Is Inappropriate In This Case**

5         Young's argument that the Complaint-In-Interpleader should be stayed or

6  dismissed under the *Younger* abstention doctrine is without merit.  The mere

7  existence of a state court contract dispute with some overlapping parties and claims

8  is insufficient to warrant the extraordinary measure of staying or dismissing a case

9  under the *Younger* abstention doctrine.  Rather, the *Younger* doctrine has been very

10  narrowly construed, and abstention is only appropriate where the state action

11  involves an interest vital to the operation of the state government.  *See, e.g.*, *Mobil*

12  *Oil*, 772 F.2d at 542.  Thus, Courts have determined that abstention under *Younger*

13  is only justified where:  (1) there are ongoing state judicial proceedings; (2) the

14  proceedings implicate important state interests; (3) the state proceedings provide the

15  plaintiff with an adequate opportunity to raise federal claims; and (4) the federal

16  court's action would enjoin, or have the practical effect of enjoining, ongoing state

17  court proceedings.  *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th

18  Cir. 2007).  Because Young cannot satisfy all four of these elements, *Younger*

19  abstention is unavailable.

20  _____

21       [1] Young argues that the interpleaded Funds are insufficient to support an interpleader because they are based on Hachette's calculation of "net proceeds" and

22  are only a small subset of the amounts at stake in the State Court Action.  Young Mot. at 6.  This argument is irrelevant, because so long as the stakeholder

23  interpleads the specific fund or property it holds, interpleader jurisdiction is not affected by its failure to deposit additional amounts claimed to be due.  *See Murphy*

24  *v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 n.2 (5th Cir. 1976).  Hachette has never suggested that the interpleaded Funds would cover everything Young claims he is

25  entitled to from previous quarters; rather Hachette has interpleaded the sum that it currently owes under the Hachette-Windblown Agreement in an effort to avoid

26  multiple liabilities with respect to the Funds.

27

28

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1.   **This Interpleader Action Will Resolve Issues That Are Not Encompassed Within The State Court Action**

Young's abstention arguments are based on the mistaken premise that the claims and issues involved in the State Court Action and this Interpleader Action are the same.  From Young's perspective, the only issue is how much he is paid in connection with the Book.  Young does not care whether that money comes from Windblown or Hachette, and he does not care about the impact or interpretation of the Hachette-Windblown Agreement.  Thus, in Young's view, all relevant disputes can be resolved in the pending State Court Action.  This narrow view ignores the broader issues facing Hachette.  Not only does Hachette face the existing claims from Young, but Hachette also faces the very real prospect of a dispute with Windblown, Jacobsen and Cummings.  If Hachette were to pay to Young the Defined Proceeds to which he claims to be entitled, Windblown (and perhaps Jacobsen and Cummings) would likely file a new action against Hachette.  Because Hachette is based in New York, the Hachette-Windblown Agreement was negotiated in large part in New York, and many of Hachette's fulfillment services took place in New York, it is very possible that such an action would be filed in New York and/or based on New York law.[2]

The State Court Action does not seek to adjudicate these potential claims against Hachette by Windblown, Jacobsen, and Cummings, but instead only raises Young's contract claims.  Thus, without this Interpleader Action, Hachette would be subject to multiple actions in different states with respect to the Funds.

---

[2] Importantly, this Court's jurisdiction under the interpleader statute extends to potential, as well as actual, claims and thus protects the stakeholder against the *possibility* of multiple liabilities, even where only one claim is pending.  *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 980 (9th Cir. 1999).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

11

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

### 2.     <u>This Case Does Not Implicate A Vital State Interest</u>

Under the *Younger* abstention doctrine, a federal court can only abstain from hearing a civil action if "the State's interests in the [state court] proceeding are so important that exercise of the federal judicial power would disregard the comity between States and the National Government."  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987).  The goal of *Younger* abstention is to "avoid federal court interference with *uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures."  *AmerisourceBergen*, 495 F.3d at 1150. Young's State Court Action does not involve the type of important and uniquely state interest required for *Younger* abstention.

The State Court Action is nothing more than a standard breach of contract case seeking monetary damages that does not implicate, in any way, important and unique state interests.  For starters, Young is not even a California resident.  Nor is Hachette.  And although the Windblown-Young Agreement is governed by California law, the breach of contract, accounting, and declaratory relief claims asserted by Young are the types of claims that are routinely resolved by federal courts every day.  Not surprisingly, Young fails to cite a single case in which *Younger* abstention was deemed proper in connection with a standard breach of contract case between private parties.  Indeed, if *Younger* abstention applied every time a pending state court action involved a breach of contract claim based on a particular state's law, *Younger* abstention would apply in virtually every case that touches on state law issues that might be resolved in a pending state court action. Such an expansion of the *Younger* doctrine would eviscerate the long-standing policy that actions can, and usually should, proceed simultaneously in both state and federal courts.  *See, e.g.*, *Colorado River*, 424 U.S. at 817 ("the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction").  Moreover, such a broad abstention doctrine

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   would make a mockery of the rule that only circumstances involving important state

2   interests justify a federal court's refusal to decide a case in deference to the states.

3          Young cites *Pennzoil* as an example of a state's interest warranting *Younger*

4   abstention where a federal action would interfere with a state court's judgment, but

5   he does not point to any comparable California judgments, statutes, or procedural

6   rules with which Hachette's Interpleader Action would interfere.  Mot. at 8.  In

7   *Pennzoil*, Texaco commenced a federal action to challenge the constitutionality of a

8   Texas law and enjoin Pennzoil from executing under that law a significant judgment

9   entered against Texaco in a Texas state court action.  *Pennzoil*, 481 U.S. at 5–6.

10  The Supreme Court found *Younger* abstention appropriate because the case involved

11  a challenge to the processes by which Texas compelled compliance with the

12  judgments of its courts.  *Id.* at 13–14.  The *Pennzoil* Court cautioned that its

13  rationale did not imply "that *Younger* abstention is always appropriate whenever a

14  civil proceeding is pending in the State Court."  *Id.* at 14 n.12.  In contrast to the

15  federal action in *Pennzoil*, Hachette's Interpleader Action does not challenge any

16  process by which a California court compels compliance with its judgments or

17  anything even remotely similar.[3]

18

19

20         [3] Likewise, Young has not articulated a state interest in his run-of-the mill

21  contract case comparable to the interests articulated in the other cases he cites in
    support of *Younger* abstention.  Mot. at 8–9; *see Ohio Civil Rights Comm'n v.*

22  *Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (state interest in elimination of
    prohibiting sex discrimination justified abstention from a § 1983 action against the

23  Ohio Civil Rights Commission); *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir.

24  2004) (state interest in enforcing state licensing requirements justified abstention in
    a §1983 action against the Oregon State Board of Examiners for Engineering and

25  Land Surveying).  Furthermore, *Ohio Civil Rights Comm'n* and *Gilbertson* are also

26  distinguishable because they involve federal actions that seek injunctions against
    ongoing state proceedings.  Hachette does not seek an injunction against the State

27  Court Action.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

13

Finally, the mere potential for conflict in the results of separate adjudications does not, without more, warrant staying the exercise of federal jurisdiction, much less abdicating federal jurisdiction entirely.  *AmerisourceBergen*, 495 F.3d at 1151. In particular, it has never been suggested that *Younger* mandates abstention where, as here, the federal action merely has partially overlapping monetary claims with an ongoing state proceeding between private civil litigants.  To the contrary, the Ninth Circuit has recognized that actions, like Young's, that seek only monetary damages do not ordinarily implicate a vital state interest, even when the government is a party to the action. *See Mobil Oil*, 772 F.2d at 542 (*Younger* abstention requires an interest vital to the operation of state government, which does not include government's interest in money damages).

### 3.    The State Action Does Not Provide Hachette With An Adequate Opportunity For Relief

This Court can provide Hachette with a more complete interpleader remedy than the remedy that would be available in a California state court.  In federal interpleader actions, the federal court may issue an order restraining all claimants from "instituting or prosecuting any proceeding in *any State or United States court* affecting the property, instrument or obligation involved in the interpleader action until further order of the court."  28 U.S.C. § 2361 (emphasis added).  Thus this Court is vested with the power to enjoin any proceedings related to the Funds that Windblown, Young, Jacobsen, or Cummings may institute against Hachette anywhere in the United States.  In contrast, a California state court is only vested with the power to restrain all parties to a state interpleader action from "instituting or further prosecuting any other proceeding in any court *in this state*."  Cal. Code Civ. Proc. § 386(f).  Thus if Windblown were to initiate a state or federal proceeding related to the Funds against Hachette in New York, where Hachette is based, this Court would be able to enjoin such a proceeding, but a California state court would be unable to do so.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

14

**4.      This Interpleader Action Would Neither Enjoin, Nor Have The Practical Effect Of Enjoining, The State Court Action**

Even if the other three requirements for *Younger* abstention could be satisfied here (and they are not), abstention "is only appropriate in the narrow category of circumstances in which the federal court action would actually enjoin the [ongoing state] proceeding, or have the practical effect of doing so." *AmerisourceBergen*, 495 F.3d at 1151 (citing *Gilbertson*, 381 F.3d at 978).  This case does not fall into that category.  The Interpleader Action does not seek to enjoin the pending State Court Action; rather, the purpose of the Interpleader Action is to determine how to allocate the Funds and to protect Hachette against additional claims by Windblown, Young, Jacobsen, or Cummings with respect to those Funds.

This requirement for *Younger* abstention is not satisfied simply when "the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it." *AmerisourceBergen,* 495 F.3d at 1151; *see also Green v. City of Tucson*, 255 F.3d 1086, 1097 (9th Cir. 2001) (en banc) ("[T]he possibility of a race to judgment is inherent in a system of dual sovereigns and, in the absence of 'exceptional' circumstances, that possibility alone is insufficient to overcome the weighty interest in the federal courts exercising their jurisdiction over cases properly before them." (citation omitted)), *overruled on other grounds by Gilbertson*, 381 F.3d at 968–969.  Thus the possibility that the resolution of this Interpleader Action might affect any particular claim Young asserts to the same Funds in his State Court Action is insufficient to justify *Younger* abstention.

Young has failed to show that the *Younger* abstention requirements are met in the present action, and thus *Younger* abstention would be improper.

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

15

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

C.     **The *Colorado River* Abstention Doctrine Does Not Justify Staying Or Dismissing This Action**

Where state and federal courts have concurrent jurisdiction over related matters, the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817.  The Supreme Court explained in *Colorado River* that because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them, abstention is appropriate only under exceptional circumstances.  *Id.*; *see also Snodgrass*, 147 F.3d at 1167–68.  This case does not present the "exceptional circumstances" justifying abstention under *Colorado River*.

1.     **The State Court Action fails to meet the threshold requirement of being a parallel proceeding**

Before even evaluating whether a dismissal of this case is proper under the *Colorado River* doctrine, this Court must first determine that the State Court Action is a "parallel" or "substantially similar" proceeding to this Interpleader Action. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  A state action is "parallel" for abstention purposes where "the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *National Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).  Because the State Court Action does not involve all of the parties and issues arising from the conflicting claims to the Funds, it does not constitute a parallel or substantially similar proceeding for purposes of *Colorado River* abstention.

This Interpleader Action involves different parties (Jacobsen and Cummings are not parties to the State Court Action), broader issues (including rights and responsibilities as between Hachette and Windblown), and seeks different relief than the State Court Action.  This Interpleader Action is based on Hachette's fear of exposure to competing claims by Windblown, Young, Jacobson, and Cummings— some of which may be based on New York law and asserted in New York.  In

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

16

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1   contrast, the State Court Action will only adjudicate Young's purported claim to

2   additional money from Windblown and Hachette in connection with the Book.  It

3   will not preclude other claims from being filed against Hachette, and it is not likely

4   to resolve the potential issues between Windblown, Jacobsen, Cummings, and

5   Hachette.  Thus, although a resolution of the two actions may involve some of the

6   same facts, the issues and relief sought in the two actions differ substantially.

### 2.   Even if the *Colorado River* doctrine applies, the factors weigh heavily in favor of this Court continuing to exercise jurisdiction over this Interpleader Action

10   Even assuming *arguendo* that the State Court Action constitutes a parallel

11   proceeding, the factors used to determine the propriety of abstention under the

12   *Colorado River* doctrine clearly preclude abstention in this case.  The Ninth Circuit

13   has identified seven non-exclusive factors that courts must examine in deciding the

14   propriety of abstention:  (1) whether either court has assumed jurisdiction over a *res*;

15   (2) the inconvenience of the federal forum; (3) the desirability of avoiding

16   piecemeal litigation; (4) the order in which jurisdiction was obtained by the

17   concurrent forums; (5) whether federal law or state law provides the rule of decision

18   on the merits; (6) whether the state court proceedings are inadequate to protect the

19   federal litigant's rights; and (7) whether exercising jurisdiction would promote

20   forum shopping.  *See, e.g.*, *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002);

21   *Colorado River*, 424 U.S. at 818.  Because only exceptional circumstances will

22   warrant an abdication of jurisdiction, a court must evaluate these factors "with the

23   balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*

24   *Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

25   A balancing of those factors here—particularly in light of the heavy weight to

26   be accorded in favor of the exercise of this Court's jurisdiction—requires denial of

27   Young's motion to dismiss, particularly because any doubt should be resolved

28   against abstention because "only the clearest of justifications will warrant

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

17

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1   dismissal." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)

2   (citing *Colorado River*, 424 U.S. at 819).

3              **(a)      This Court has already assumed jurisdiction over the**

4                         **Funds.**

5              Although Young contends that the first factor—whether a court has assumed

6   jurisdiction over a *res*—is neutral (Mot. at 10, n.3), this factor actually weighs

7   against abstention to the extent the Funds constitute a res.  This Court has exercised

8   its jurisdiction over the Funds.  On June 3, 2010, this Court ordered that the Funds

9   be deposited with the Clerk of the District Court for the Central District of

10  California.

11             **(b)      The federal forum is convenient**

12             Young contends that the convenience of the forums is a neutral factor in the

13  present *Colorado River* analysis.  Mot. at 10, n.3.  The United States District Court

14  for the Central District is at least equally as convenient but likely more convenient

15  than the Ventura County Superior Court.  The two courts are approximately 60

16  miles apart.   In *Travelers*, the Ninth Circuit determined that a distance of 200 miles

17  between the federal and state court was "not sufficiently great that this factor

18  point[ed] toward abstention."  914 F.2d at 1368.  Moreover, counsel for all parties

19  are based in Los Angeles near the federal court, and Young is a resident of Oregon.

20  The federal forum is more convenient than the state forum for Hachette since

21  Hachette is a New York-based company that is more familiar with federal

22  procedural rules than local California procedural rules.  Furthermore, it would be

23  easier to obtain discovery from key non-party witnesses who reside outside of

24  California in the federal forum than in the state forum.  *Compare*  Fed. R. Civ. P.

25  45(b)(2) *with* Cal. Code Civ. Proc. §§ 2026.010(c) & (f).  For example, in order to

26  compel any depositions of, or to obtain documents from, Young's family or business

27  associates based in Oregon, the parties likely would need to obtain a commission

28  from the Clerk of the Ventura County Superior Court and then initiate a new

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

18

1 proceeding in Oregon to cause the issuance of a subpoena.  Cal. Code Civ. Proc.

2 §§ 2026.010(c) & (f).

3         **(c)**        **<u>There are no exceptional circumstances here that</u>**

4                 **<u>justify special concerns about piecemeal litigation</u>**

5       The third *Colorado River* factor considers "whether exceptional

6 circumstances exist which justify special concern about piecemeal litigation."

7 *Travelers*, 914 F.2d at 1369.  In order for this factor to weigh in favor of abstention,

8 there must be "evidence of a strong federal policy that all claims be tried in the state

9 courts."  *United States v. Morros*, 268 F.3d 695, 706–07 (9th Cir. 2001).  For

10 example, in *Colorado River*, the Supreme Court found that "the clear federal policy

11 evinced by [the McCarran Amendment, 43 U.S.C. § 666] is the avoidance of

12 piecemeal adjudication of water rights in a river system."  *Colorado River*, 424 U.S.

13 at 819.  Young has not pointed to any such clear federal policy here.

14       The Ninth Circuit has distinguished cases like *Travelers*, which involve

15 ordinary contract and tort issues, from cases like *Colorado River*, which implicate

16 important real property rights and create a substantial danger of inconsistent

17 judgments.  *Travelers*, 914 F.2d at 1369.  As in *Travelers*, the State Court Action at

18 issue here involves contract claims that do not raise special concerns about

19 piecemeal litigation.  Dismissing this Interpleader Action may actually lead to more,

20 not less, litigation.  As noted above, Hachette fears that if this Court does not

21 determine the proper allocation of the interpleaded Funds, Windblown, Jacobsen,

22 and Cummings may file an additional lawsuit against Hachette, possibly in New

23 York, for breach of the Hachette-Windblown Agreement.

24         **(d)**        **<u>The pendency of the State Court Action does not</u>**

25                 **<u>warrant abstention</u>**

26       The fourth *Colorado River* factor considers the order in which jurisdiction

27 was obtained by the two forums at issue.  *Holder*, 305 F.3d at 870.  This factor is

28 generally measured "in terms of how much progress has been made in the two

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

19

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.  When Hachette filed its Interpleader Action, both the State Court Action and the Federal Court Action were pending.  The State Court Action is still in the early stages:  a substitute judge denied Hachette's and Windblown's demurrers and motions to strike, but there have been no rulings on the merits of the case and discovery in the State Court Action is in its very early stages.  Indeed, the state court has not even set any discovery deadlines or a trial date.

### (e)  **This Court is fully capable of resolving the legal issues involved in this Interpleader Action**

The fifth factor—whether federal law or state law provides the rule of decision on the merits—does not support abstention.  The presence of Young's California contract claims does not warrant dismissal of this Interpleader Action. The Ninth Circuit has explained that the presence of state law issues may weigh in favor of surrendering jurisdiction "only in some rare circumstances." *Travelers*, 914 F.2d at 1370 (citation omitted).  Claims for breaches of fiduciary duties and breaches of contract are not the type of "rare circumstances" that support abstention because they are the type of "routine issues of state law" the district court is fully capable of deciding.  *Id.*  This Court is well-equipped to handle any issues related to California contracts in this Interpleader Action.  And this court is better-equipped to handle Hachette's Interpleader Action than the state court is since the state court's power to enjoin potential proceedings in other states is more limited.

### (f)  **The State Court Action is inadequate to protect Hachette's rights**

The sixth factor considers whether the state proceedings are inadequate to protect the federal litigant's rights.  *Holder*, 305 F.3d at 870.  As discussed in Section III.B.3, above, Young's pending State Court Action does not provide Hachette with an adequate opportunity to protect itself against exposure to multiple liabilities stemming from distribution of the Funds.  Nevertheless, Young argues

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

20

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

that this factor supports abstention because "Hachette can easily file its Interpleader in the State Court Action." Mot. at 11. But Young fails to address the limitations of state court interpleader actions as compared to federal interpleader actions. A California state court may only enjoin further proceedings related to the interpleaded funds within California, whereas the federal court can enjoin such proceedings in any state or federal forum. It has been held to be an abuse of discretion to dismiss a federal case where, as here, there is any substantial doubt that the state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28.

### (g)   <u>Hachette has not engaged in forum shopping</u>

Hachette filed this Interpleader Action in good faith to resolve the competing claims to the Funds efficiently and to protect itself from exposure to multiple claims and liabilities. Hachette was forthright in acknowledging the pending State Court Action and Federal Court Action at the time it filed this Interpleader Action, and at no time has attempted to mislead this Court about the related actions pending here or in Ventura County. In determining the appropriate forum to file this Interpleader Action, Hachette had to chose between the state forum, in which Young's claim was pending, and the federal forum, in which Jacobsen's and Cumming's claims were pending. As between the two forums, the federal forum allows far greater protection against additional claims to the funds, offers the benefit of nationwide jurisdiction, and offers the consistency of the Federal Rules of Civil Procedure. Ultimately, Hachette's choice of forum was justified and appropriate as detailed herein, and this factor therefore weighs against abstention.

Not surprisingly, Young offers nothing but pure speculation in support of his claim of forum shopping. Young's "theory" that Hachette's choice of forum was a result of "losing several related pleading motions in the State Court" is without merit. Mot. at 11. The only motions that have been decided so far were on the pleadings and did not reach the merits of the case, the decision was rendered by a

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

21

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

judge other than the actual state court judge, and those motions were filed by counsel for Windblown on Hachette's behalf, not Hachette's current counsel. Moreover, Hachette fully understands that the State Court Action is not going away and this Interpleader Action, even if intended as such (which it is not), would not allow Hachette to avoid an allegedly unfriendly state forum.

As detailed above, an appropriate balancing of all of the *Colorado River* factors plainly demonstrates the absence of the "exceptional circumstances" necessary to permit abstention.  Young's motion to dismiss based on the *Colorado River* abstention doctrine must therefore be denied.[4]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff-in-Interpleader Hachette respectfully requests that this court deny Young's motion to dismiss this Interpleader Action.

Dated:  July 2, 2010                    KENDALL BRILL & KLIEGER LLP


By:  /s/ Richard B. Kendall
     Richard B. Kendall
     Attorneys for Plaintiff-in-Interpleader

---

[4] Young has not moved for a stay under either the Younger or Colorado River abstention doctrines, and Hachette agrees that a stay of this action is inappropriate.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

54315

22

HACHETTE BOOK GROUP, INC.'S OPPOSITION TO MOTION TO DISMISS

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

*HACHETTE BOOK GROUP, INC. V. WINDBLOWN MEDIA, INC., et al.*
**USDC Case No. CV10-03534 JFW (JCx)**

4

5

  At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 10100 Santa Monica Blvd., Suite 1725, Los Angeles, California  90067.

6

7

  On July 2, 2010, I served true copies of the following document described as **HACHETTE BOOK GROUP, INC.'S OPPOSITION TO DEFENDANT YOUNG'S MOTION TO DISMISS** on the interested parties in this action as follows:

8

9

    Michael T. Anderson, Esq.
    Donald A. Miller, Esq.
    LOEB & LOEB LLP

10

    10100 Santa Monica Boulevard, Suite 2200
    Los Angeles, CA  90067-4164

11

    Telephone:   (310) 282-2000
    Facsimile:    (310) 282-2200

12

    *Counsel for William Paul Young*

13

14

15

  **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I certify that the foregoing document(s) is being filed electronically by using the CM/ECF system.  As such, the document will be served electronically on all interested parties whose attorneys are registered CM/ECF users and have consented to electronic service.

16

17

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

18

  Executed on July 2, 2010, at Los Angeles, California.

19

20

21

        /s/ Richard B. Kendall
        Richard B. Kendall

22

23

24

25

26

27

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1

**<u>PROOF OF SERVICE</u>**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

*HACHETTE BOOK GROUP, INC. V. WINDBLOWN MEDIA, INC., et al.*
**USDC Case No. CV10-03534 JFW (JCx)**

4

5

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 10100 Santa Monica Blvd., Suite 1725, Los Angeles, California  90067.

6

7

On July 2, 2010, I served true copies of the following document described as **HACHETTE BOOK GROUP, INC.'S OPPOSITION TO DEFENDANT YOUNG'S MOTION TO DISMISS** on the interested parties in this action as follows:

8

9

Martin D. Singer, Esq.
Allison Hart Sievers, Esq.
LAVELY & SINGER

10

2049 Century Park East, Suite 2400
Los Angeles, CA  90067-2906

11

Telephone:   (310) 556-3501
Facsimile:    (310) 556-3615

12

13

*Counsel for Windblown Media, Inc., Wayne Jacobsen, and Brad Cummings*

14

**BY HAND DELIVERY:**  I caused such envelope to be delivered by hand to the office of the addressee.

15

16

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

17

Executed on July 2, 2010, at Los Angeles, California.

18

19

/s/ Richard B. Kendall
Richard B. Kendall

20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067